Filed 11/16/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BERNADETTE TANGUILIG,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BLOOMINGDALE'S, INC.,<br><br>        Defendant and Appellant. | A145283<br><br>(San Francisco City and County<br>Super. Ct. No. CGC-14-541208) |

Bernadette Tanguilig, an employee at Bloomingdale's, Inc. (Bloomingdale's), filed a representative action on behalf of herself and fellow employees pursuant to the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.),[1] alleging several Labor Code violations by the company. Bloomingdale's moved to compel arbitration of Tanguilig's "individual PAGA claim" and stay or dismiss the remainder of the complaint. The trial court denied the motion. We affirm. Under *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) and consistent with the Federal Arbitration Act (FAA) (9 U.S.C. et seq.), a PAGA representative claim is nonwaivable by a plaintiff-employee via a predispute arbitration agreement with an employer, and a PAGA claim (whether individual or representative) cannot be ordered to arbitration without the state's consent.

## I.    LEGAL FRAMEWORK

Because this case turns on a proper understanding of PAGA and application of Supreme Court precedent, we begin with pertinent passages from *Iskanian* discussing these issues: " 'In September 2003, the Legislature enacted [PAGA]. The Legislature

---

[1] Undesignated statutory references are to the Labor Code.

1

declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts.  (Stats. 2003, ch. 906, § 1.)

" 'Under this legislation, an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations.  ( . . . § 2699, subd. (a).)  Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the "aggrieved employees."  ( . . . § 2699, subd. (i).) [¶] Before bringing a civil action for statutory penalties, an employee must comply with . . . section 2699.3.  ( . . . § 2699, subd. (a).)  That statute requires the employee to give written notice of the alleged Labor Code violation to both the employer and the Labor and Workforce Development Agency, and the notice must describe facts and theories supporting the violation.  ( . . . § 2699.3, subd. (a).)  If the agency notifies the employee and the employer that it does not intend to investigate . . . , or if the agency fails to respond within 33 days, the employee may then bring a civil action against the employer.  ( . . . § 2699.3, subd. (a)(2)(A).)  If the agency decides to investigate, it then has 120 days to do so.  If the agency decides not to issue a citation, or does not issue a citation within 158 days after the postmark date of the employee's notice, the employee may commence a civil action.  ( . . . § 2699.3, subd. (a)(2)(B).)'  (*Arias* [*v. Superior Court* (2009)] 46 Cal.4th [969,] 980–981, fn. omitted.)

" '[T]he judgment in [a PAGA representative] action is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding.'  ([*Id.* at p. 985].) . . . 'An employee plaintiff suing . . . under the [PAGA] does so as the proxy or agent of the state's labor law enforcement agencies . . . . [¶] . . . [A]n action to recover civil penalties "is fundamentally a law

enforcement action designed to protect the public and not to benefit private parties" [citation]. . . .' (*Arias, supra,* 46 Cal.4th at p. 986.) [¶] . . . [¶] A PAGA representative action is therefore a type of qui tam action. . . . The government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit." (*Iskanian, supra,* 59 Cal.4th at pp. 379–382.)

*Iskanian* holds that an employee's right to bring a PAGA action is nonwaivable under state law (*Iskanian, supra,* 59 Cal.4th at pp. 382–383, citing Civ. Code, §§ 1668, 3513), and this state-law rule is not preempted by the FAA: "We conclude that the rule against PAGA waivers does not frustrate the FAA's objectives because . . . the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state [Labor and Workforce Development] Agency." (*Iskanian*, at p. 384.) "Nothing in the text or legislative history of the FAA nor in the Supreme Court's construction of the statute suggests that the FAA was intended to limit the ability of states to enhance their public enforcement capabilities by enlisting willing employees in qui tam actions. Representative actions under the PAGA, unlike class action suits for damages, do not displace the bilateral arbitration of private disputes between employers and employees over their respective rights and obligations toward each other. Instead, they directly enforce *the state's* interest in penalizing and deterring employers who violate California's labor laws. . . . [¶] . . . Our FAA holding applies specifically to a state law rule barring predispute waiver of an employee's right to bring an action that can only be brought by the state or its representatives, where any resulting judgment is binding on the state and any monetary penalties largely go to state coffers." (*Id.* at pp. 387–388; see *Sakkab v. Luxottica Retail North America, Inc.* (9th Cir. 2015) 803 F.3d 425, 431–440 [agreeing that California's representative action nonwaivability rule is not preempted by the FAA].)

## II. BACKGROUND

On August 15, 2014, Tanguilig filed a "representative PAGA action . . . on behalf of the state of California, and on behalf of herself and other current or former employees . . . , assert[ing] claims for civil penalties and statutory remedies." Tanguilig alleged she

3

was a current Bloomingdale's employee and the company failed to provide its commission-earning employees with paid rest periods, minimum wage for noncommission-producing activities, complete and accurate wage statements, and timely payment of their wages.

Bloomingdale's filed a motion to compel arbitration. The company produced a copy of the dispute resolution procedure (Agreement) that Tanguilig accepted as a condition of her employment. The Agreement required Tanguilig to submit "all employment-related legal disputes, controversies or claims" to a four-step dispute resolution process that culminated in final and binding arbitration. The Agreement prohibited an arbitrator from "consolidat[ing] claims of different [employees] into one (1) proceeding" and from "hear[ing] an arbitration as a class or collective action."[2]

*Iskanian* had been decided by the time Bloomingdale's filed its motion. However, Bloomingdale's argued *Iskanian* was wrongly decided. It also argued this case was distinguishable from *Iskanian* because Tanguilig, unlike Iskanian, had the ability to opt out of the arbitration process. Bloomingdale's asked the trial court to "(1) compel the arbitration of Tanguilig's individual claims; and (2) stay this litigation as required by the [FAA]." In opposition, Tanguilig argued she had asserted no individual claims; a predispute waiver of representative PAGA claims was unenforceable under *Iskanian*;

---

[2] We note a distinction between the "representative action waiver" discussed in *Iskanian* and the Agreement. In *Iskanian*, the arbitration agreement expressly provided that the parties would not "assert class action or representative action claims against the other in arbitration *or otherwise*," including in court. (*Iskanian, supra,* 59 Cal.4th at pp. 360–361, italics added.) The Agreement expressly bars only the *arbitration* of collective claims. However, because the Agreement also requires Tanguilig to submit all employment-related disputes or controversies to arbitration, the bar on collective arbitration reasonably could be construed as a bar to Tanguilig bringing a representative claim in any forum. (See *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 336–338 [similar arbitration provisions implicitly so construed with respect to class actions and class arbitrations].) The parties implicitly construe the contract this way because they refer to the Agreement's "representative action waiver" as if it were substantively equivalent to the waiver at issue in *Iskanian*. We accept this implicit joint interpretation of the Agreement for purposes of this appeal.

4

*Iskanian* was not distinguishable on the basis of the Agreement's opt-out provision as *Iskanian* exempted only certain postdispute waivers; and the representative action waiver rendered the Agreement unconscionable. In reply, Bloomingdale's argued the individual element of Tanguilig's PAGA claim was subject to arbitration and, even if the individual element was not arbitrable, the representative action waiver was enforceable. Bloomingdale's asked the court to "compel [Tanguilig's] individual PAGA claim to arbitration," or "[i]f the Court concludes that the PAGA claim cannot be brought on an individual basis, . . . [to] dismiss the Complaint."

The court denied the motion to compel, ruling the representative action waiver was unenforceable under *Iskanian* despite the existence of an opt-out procedure in the Agreement. Bloomingdale's appealed.

### III.   DISCUSSION

On appeal, Bloomingdale's no longer argues *Iskanian* is distinguishable based on the opt-out provision. Instead, it argues that the case was wrongly decided or, if *Iskanian* correctly ruled that a representative action waiver is unenforceable despite the FAA, that Tanguilig should have been required to arbitrate the individual element of her PAGA claim.

This appeal presents questions of law that we review de novo. (*Franco v. Arakelian Enterprises, Inc.* (2015) 234 Cal.App.4th 947, 955.) We affirm the trial court's denial of the motion to compel arbitration in its entirety.

A.   *Iskanian*

We first reject Bloomingdale's suggestion that we depart from *Iskanian* either as wrongly decided or as superseded by intervening United States Supreme Court precedent.

In its opening brief, Bloomingdale's relies on pre-*Iskanian* United States Supreme Court decisions and post-*Iskanian* federal district court decisions to support its argument that the case was wrongly decided. Bloomingdale's fails to recognize that, as an inferior state court, we are bound to follow the California Supreme Court's holding in *Iskanian* under the doctrine of stare decisis. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) More specifically, in the absence of a subsequent contrary decision

5

of the United States Supreme Court, we are bound by the California Supreme Court's holding on the issue of federal law that Bloomingdale's contends was wrongly decided in *Iskanian* (i.e., FAA does not preempt California's bar against compelled waiver of a PAGA representative action). (See *People v. Neer* (1986) 177 Cal.App.3d 991, 999.) Furthermore, we are bound by the *Iskanian* court's interpretation of the pre-*Iskanian* United States Supreme Court decisions cited by Bloomingdale's. Finally, we note that the Ninth Circuit has ruled that *Iskanian* correctly decided the federal question, thus superseding conflicting prior federal district court decisions cited by Bloomingdale's.[3] (See *Sakkab v. Luxottica Retail North America, Inc., supra,* 803 F.3d at p. 427.) In sum, we agree with other California Courts of Appeal that we are bound to follow *Iskanian*'s holdings that representative action waivers are unenforceable under state law and that this rule is not preempted by the FAA. (See, e.g., *Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 647, fn. 3; *Securitas Security Services USA, Inc. v. Superior Court* (2015) 234 Cal.App.4th 1109, 1121; *Franco v. Arakelian Enterprises, Inc., supra,* 234 Cal.App.4th at p. 956; see also *Miranda v. Anderson Enterprises, Inc.* (2015) 241 Cal.App.4th 196, 200, 203 [reversing dismissal of representative action claim in light of *Iskanian*; discussion of issue unpublished].)

In its reply brief, Bloomingdale's argues that *Iskanian* is no longer good law in light of *DIRECTV, Inc. v. Imburgia* (2015) ___ U.S. ___ [136 S.Ct. 463] (*DIRECTV*), which was decided after enforcement of the *Iskanian* rule in the above-cited California decisions. We are unpersuaded that *DIRECTV* provides grounds for a departure from *Iskanian*. In *DIRECTV*, our colleagues in the Second Appellate District had held a binding arbitration provision in a customer service agreement that included a class action prohibition was unenforceable under California law. (*DIRECTV*, at p. 466.) The agreement at issue provided that "if the 'law of your state' makes the waiver of class

---

[3] In any event, federal district court decisions not binding authority in this court even on questions of federal law. (See *Karuk Tribe of Northern California v. California Regional Water Quality Control Bd. North Coast Region* (2010) 183 Cal.App.4th 330, 352.)

6

arbitration unenforceable, then this entire arbitration provision 'is unenforceable.' "
(*Ibid.*)  At the time the California plaintiffs entered into their agreement with DIRECTV,
class-arbitration waivers were unenforceable under state law pursuant to *Discover Bank
v. Superior Court* (2005) 36 Cal.4th 148.  The United States Supreme Court subsequently
held the *Discover Bank* rule was preempted by the FAA.  (*AT&T Mobility LLC v.
Concepcion, supra,* 563 U.S. at p. 352.)  The Second District had reasoned that FAA
preemption of the *Discover Bank* rule did not change the result in the plaintiffs'
controversy with DIRECTV because the parties were free to refer in the contract to
California law as it would have been absent federal preemption and the court so
construed the contract.  (*DIRECTV*, at p. 467.)  The Supreme Court reversed, holding that
the Second District's interpretation of the phrase " 'law of your state' " related only to
arbitration agreements, and therefore did not place arbitration contracts " 'on equal
footing with all other contracts' " and consequently did not give " 'due regard . . . to the
federal policy favoring arbitration.' "  (*Id.* at p. 471.)

DIRECTV decided a narrow issue:  whether, consistent with the FAA, a state court
may construe "state law" in an arbitration agreement as referring to state law as it would
be without FAA preemption.  (*DIRECTV, supra,* 136 S.Ct. at pp. 466–467.)  The
Supreme Court held such a reading of the contract was contrary to the FAA because there
was no evidence the state courts would interpret the phrase in the same manner when
interpreting language in nonarbitration contracts.  This disparate treatment of arbitration
provisions violated the terms of the FAA's savings clause (9 U.S.C. § 2).  (*DIRECTV,* at
pp. 468–471.)  In short, *DIRECTV* decided an issue that is not pertinent to the case before
us.  Moreover, *DIRECTV* dealt only with arbitration of private damage claims, and not
enforcement of civil penalties on behalf of the state.  A post-*DIRECTV* decision of the
Ninth Circuit continues to regard *Iskanian* as good law, holding that a PAGA waiver
contained in Uber's agreements with its drivers is invalid.  (*Mohamed v. Uber
Technologies, Inc.* (2016) 836 F.3d 1102, 1113–1114.)  We find no application of
*DIRECTV* to the case before us.

Bloomingdale's argues *DIRECTV* nevertheless undermines *Iskanian* because *DIRECTV* takes a hard look at whether a state rule places arbitration agreements on an equal footing with other contracts (see *DIRECTV, supra,* 136 S.Ct. at pp. 468–471), whereas *Iskanian*, in Bloomingdale's words, "failed to look beyond whether its rule is 'general' in name only." This argument is unpersuasive. Bloomingdale's erroneously identifies "the *Iskanian* rule" as the *substantive* requirement that a contract ensure "the availability of the right to recover civil penalties on behalf of other employees." For the purpose of applying the FAA's savings clause (i.e., of comparing how state courts treat arbitration contracts versus other contracts), the relevant state-law rule is the *principle of contract law* applied in *Iskanian*: the state-law bar against contractual waivers of statutory rights, which is codified in Civil Code sections 1668 and 3513. (*Iskanian, supra,* 59 Cal.4th at pp. 382–383.) Bloomingdale's does not and cannot dispute that this legal principle is generally applied to contracts by the California courts. (See 1 Witkin, Summary of Cal. Law (10th ed. 2005 & 2016 supp.) Contracts, §§ 679–684; see also *Sakkab v. Luxottica Retail North America, Inc., supra,* 803 F.3d at pp. 432–433 ["*Iskanian* rule is a ground for the revocation of any contract" (capitalization omitted)].)

We conclude that *Iskanian* definitively resolves the arbitrability of the representative claim. The representative action waiver in the Agreement is unenforceable under state law and this California rule is not preempted by the FAA. Tanguilig's purported waiver of her right to bring a representative PAGA action is unenforceable.[4]

---

[4] We note, however, that Tanguilig's action seeks not only civil penalties recoverable in a PAGA action, but also statutory penalties that are *not* recoverable in a PAGA action. As the *Iskanian* court explained, "[C]ivil penalties recover[able] on behalf of the state under the PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities." (*Iskanian, supra,* 59 Cal.4th at p. 381, italics added; see *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 377–378; *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1114.) *Iskanian*'s prohibition on representative action waivers applies only to a representative action under PAGA seeking recovery of civil penalties ("an action that can only be brought by the state or its representatives") where the state is the real party in interest. (*Iskanian, supra,* 59 Cal.4th at p. 388.) Bloomingdale's raised this issue in the trial court and suggested that Tanguilig's claims for statutory penalties should be arbitrated. In

B.    *Individual PAGA Claim*

Bloomingdale's argues that, even if we follow *Iskanian* and hold the representative action waiver unenforceable, we should compel arbitration of "the individual portion of Tanguilig's PAGA claim" and stay "the representative portion" pending completion of arbitration.  Tanguilig responds that no individual cause of action exists under PAGA and, even if it did, *her* claim is by nature representative and cannot be split into individual and representative components.

It is less than clear whether an "individual" PAGA cause of action is cognizable, even in a judicial forum.  Permitting pursuit of only individual penalties appears inconsistent with PAGA's objectives.  An action to recover civil penalties " ' "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." ' " (*Iskanian, supra*, 59 Cal.4th at p. 381.)  *Iskanian* addressed the possibility of an individual PAGA claim as follows:  "[The employer] argues that the arbitration agreement at issue here prohibits only representative claims, not individual PAGA claims for Labor Code violations that an employee suffered.  Iskanian contends that the PAGA, which authorizes an aggrieved employee to file a claim 'on behalf of himself or herself *and* other current or former employees' (§ 2699, subd. (a), italics added), does not permit an employee to file an individual claim.  (Compare *Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119, 1123–1124 [agreeing with *Iskanian'*s position] with *Quevedo v. Macy's, Inc.* (C.D.Cal. 2011) 798 F.Supp.2d 1122, 1141–1142 [an employee may bring an individual PAGA action and waive the right to bring it on behalf of other employees].)" (*Iskanian, supra,* 59 Cal.4th at pp. 383–384.)[5]

---

response, Tanguilig disclaimed any intention to seek non-PAGA remedies.  Because the issue is not discussed in the parties' appellate briefs, we assume the issue was resolved by Tanguilig's concession.

[5] At least two other appellate courts have followed *Reyes* and concluded that "a single representative PAGA claim *cannot* be split into an arbitrable individual claim and a nonarbitrable representative claim." (*Williams v. Superior Court, supra,* 237 Cal.App.4th at p. 649; see *Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408, 421 [employer may not force employee to split PAGA claim into individual and

9

The *Iskanian* court observed that " '[A]ssuming it is authorized, a single-claimant arbitration under the PAGA for individual penalties will not result in the penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code. That plaintiff and other employees might be able to bring individual claims for Labor Code violations in separate arbitrations does not serve the purpose of the PAGA, even if an individual claim has collateral estoppel effects. (*Arias*[ *v. Superior Court*]*, supra,* 46 Cal.4th at pp. 985–987.) Other employees would still have to assert their claims in individual proceedings.' (*Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 502, fn. omitted.)" (*Iskanian, supra,* 59 Cal.4th at p. 384.) Thus, while assuming the possibility of such a claim, the *Iskanian* court did not directly decide whether an "individual PAGA claim" (i.e., a PAGA claim brought solely on behalf of the plaintiff) is cognizable.

We need not decide this question either, since we conclude that, regardless of whether an individual PAGA cause of action is cognizable, a PAGA plaintiff's request for civil penalties on behalf of himself or herself is not subject to arbitration under a private arbitration agreement between the plaintiff and his or her employer. This is because the real party in interest in a PAGA suit, the state, has not agreed to arbitrate the claim. (See *Iskanian, supra*, 59 Cal.4th at p. 382 ["[t]he government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit"].)

"Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [Labor and Workforce Development] Agency or aggrieved employees—that the employer has violated the Labor Code. Through his PAGA claim, Iskanian is seeking to recover civil penalties, 75 percent of which will go to the state's coffers. . . . '[A]ny judgment in a PAGA action is binding on the government . . . .'

representative components, with each litigated in a different forum].) *Perez* declined to decide whether PAGA claims are categorically exempted from private arbitration agreements. (*Perez,* at p. 422.)

[Citation.] . . . '[*E*]*very PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee—the plaintiff bringing the action—or as to other employees as well, is a representative action on behalf of the state.*' " (*Iskanian, supra,* 59 Cal.4th at pp. 386–387, some italics added.)

Because a PAGA plaintiff, whether suing solely on behalf of himself or herself or also on behalf of other employees, acts as a proxy for the state only with the state's acquiescence (see § 2699.3) and seeks civil penalties largely payable to the state via a judgment that will be binding on the state, the PAGA claim cannot be ordered to arbitration without the *state's* consent. The FAA reflects the " 'fundamental principle that arbitration is a matter of contract.' " (*AT&T Mobility LLC v. Concepcion, supra,* 563 U.S. at p. 339.) "[A] party may not be compelled under the FAA to submit to . . . arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." (*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 684.) As *Iskanian* observed, the United States Supreme Court itself held in a somewhat analogous case that an Equal Employment Opportunity Commission enforcement action seeking victim-specific relief cannot be ordered to arbitration based on the victim's arbitration agreement with his or her employer, relying primarily on the rationale that "the EEOC [is] not a party to the arbitration agreement." (*Iskanian, supra,* 59 Cal.4th at p. 386, citing *EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279, 289 ["nothing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement"; FAA "does not purport to place any restriction on a nonparty's choice of a judicial forum"].) We believe that the same reasoning is applicable to PAGA actions, where the state is the real party in interest.

Holding that a PAGA claim, individual or collective, cannot be arbitrated pursuant to a predispute arbitration agreement without the state's consent does not conflict with the purposes of the FAA. "[T]he FAA aims to ensure an efficient forum for the resolution of *private* disputes" (*Iskanian,* at p. 384), not qui tam citizen actions on behalf of the government for the purposes of enforcing state law (*id.* at p. 385). (See *Valdez v. Terminix Internat. Co. LP* (C.D.Cal., July 14, 2015, No. CV 14-09748 DDP (Ex))

11

2015 U.S.Dist. Lexis 92177, pp. *27–28.) [representative PAGA action cannot be ordered to arbitration without state's consent: "[a]s a matter of logic, if the claim belongs primarily to the state, it should be the state and not the individual defendant that agrees to waive the judicial forum"];[6] *Ridgeway v. Nabors Completion & Prod. Services* (C.D.Cal. 2015) 139 F.Supp.3d 1084, 1094 [following *Valdez* on this point]; *Cobarruviaz v. Maplebear, Inc.* (N.D.Cal. 2015) 143 F.Supp.3d 930, 946–947 [same].) We find the reasoning of *Valdez* persuasive.

Bloomingdale's suggests it would be absurd if arbitration of individual Labor Code claims for statutory penalties and unpaid penalties were permissible as is true under current law,[7] but the individual portion of a PAGA representative claim were not arbitrable. We disagree. With respect to state legislative intent, we note that the Legislature has provided a variety of enforcement mechanisms for Labor Code violations—e.g., individual administrative claims for back wages, PAGA claims, Labor and Workforce Development Agency actions for civil penalties on behalf of multiple employees, and prosecutions for criminal misdemeanors (see *Dunlap v. Superior Court* (2006) 142 Cal.App.4th 330, 337–338 [citing PAGA legislative history])—and expressly

---

[6] The *Valdez* court further reasoned: "In the PAGA statute, the Legislature has explicitly selected a judicial forum as the default forum. E.g., . . . § 2699(e)(1) ('[W]henever the Labor and Workforce Development Agency . . . has discretion to assess a civil penalty, *a court* is authorized to exercise the same discretion, subject to the same limitations and conditions, to assess a civil penalty.') (emphasis added). Thus, both federalism and separation-of-powers concerns are at their apex here. Moreover, civil enforcement of state labor laws is a matter of traditional, if not preeminent, state regulation." (*Valdez v. Terminix Internat. Co. LP, supra,* 2015 U.S.Dist. Lexis 92177 at p. *28.)

[7] See *Perry v. Thomas* (1987) 482 U.S. 483, 492 (§ 229, permitting court actions for unpaid wages despite existence of a private arbitration agreement, preempted by FAA); *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1119–1121 (ordering arbitration of individual non-PAGA claims raised in putative class action that alleged violations of Labor Code and sought "statutory penalties"); *Caliber Bodyworks, Inc. v. Superior Court, supra,* 134 Cal.App.4th at p. 378 ("an employer is potentially liable for unpaid wages and interest, statutory penalties *and* civil penalties for many violations of Labor Code wage-and-hour provisions").

provided that PAGA was not intended to displace the other enforcement options (see *ibid.*; § 2699, subd. (g)(1) ["[n]othing in this part shall operate to limit an employee's right to pursue or recover other remedies available under state or federal law, either separately or concurrently with an action taken under this part"]).  The Legislature's presumed awareness that some of these enforcement actions might be directed to arbitration pursuant to the FAA does not signify that the Legislature expected or intended *all* such actions to be subject to arbitration.  With respect to federal legislative intent regarding the FAA, *Iskanian* holds that qui tam actions were never intended to be within the ambit of the FAA; thus, preventing arbitration of qui tam-style PAGA actions without the state's consent is consistent with the FAA.  (*Iskanian, supra,* 59 Cal.4th at p. 382.)  We see no absurdity in the result that individual claims for unpaid wages and statutory penalties, but not PAGA claims for civil penalties, might be ordered to arbitration under a private predispute employee-employer arbitration agreement.

Finally, our analysis is not altered by the *Iskanian* court's observation that representative actions might *better* serve PAGA's purposes than an individual claim for civil penalties.  (See *Iskanian, supra,* 59 Cal.4th at p. 384, citing *Brown v. Ralphs Grocery Co., supra,* 197 Cal.App.4th at p. 502.)  Read in its entirety, the *Iskanian* opinion clearly holds that the state is the real party in interest in a PAGA claim regardless of whether the claim is brought in an individual or representative capacity.  (See *Iskanian,* at pp. 382, 386–388.)  The court wrote, " '[E]*very* PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee—the plaintiff bringing the action—or as to other employees as well, is a representative action on behalf of the state.' " (*Id.* at p. 387.)  For this reason, the FAA, which is primarily concerned with private disputes, does not preempt the state-law bar against a private predispute waiver of a PAGA claim.  (*Id.* at pp. 384–388.)  As *Iskanian* states, PAGA is fundamentally "a dispute between an employer and the *state*." (*Id.* at p. 386.)  For the same reason, the right to litigate a PAGA claim in court is not subject to predispute waiver—with respect to an "individual" *or* a group claim—by an individual employee

13

pursuant to a private employment arbitration agreement.  That is, the claim cannot be ordered to arbitration without the consent of the real party in interest, the state.

## IV.    DISPOSITION

The order denying Bloomingdale's motion to compel arbitration is affirmed. Bloomingdale's shall bear Tanguilig's costs on appeal.


_____
BRUINIERS, J.


WE CONCUR:


_____
JONES, P. J.


_____
SIMONS, J.

14

Superior Court of the City and County of San Francisco, No. CGC-14-541208, Ernest H. Goldsmith, Judge.

Jackson Lewis, David S. Bradshaw, Nathan W. Austin, Patrick C. Mullin; and Michael C. Christman for Defendant and Appellant.

Cornerstone Law Group, Gordon W. Renneisen, Harry G. Lewis and Jennifer A. Donnellan for Plaintiff and Respondent.